13-1648 Summit 6 v. Samsung Electronics. Let me get settled here. Good morning, may it please the court. The district court's fundamental error in this case was in its claim construction of Claim 38. It analyzed Claim 38 and the specific language parameters being provided to in that claim as simply a characteristic as opposed to what I think is the appropriate way to interpret that, which is that it is a limitation on the claim. And I think the easiest way to understand that, because the language can be read I think in a variety of ways, is to undertake what I view as the more holistic approach, which is to look at it in the context of the patent prosecution, the other claims in the case, and the specification. And if you do that, and I think the prosecution is the most clear in terms of demonstrating that this has a temporal limitation embodied in it, and on 25179 of the Joint Appendix, the examiner rejects these claims as indefinite on the basis of that they recite previously received preprocessing parameters. Since the claims are not shown any previously received parameter prior to the preprocessing step, such claim is indefinite. And in response to that, what did the inventors do? They went through and changed all of the language, including the claim that became Claim 38, from past tense to present tense. They kept some provisions that have a true past tense component in them just as they were, but they changed everything else into a present tense. Is this the term being... I'm sorry. No, go ahead. Is this the term being provided to that you're referring to? Yes, Your Honor. So, you're arguing what appears to be clearly a claim construction argument. Did you make that argument during the Daubert hearing? During the Daubert hearing as opposed to during the claim construction process? During the claim construction process. Oh, absolutely. Our argument all along was that the timing of this is absolutely critical, and the reason you know that is because Samsung obviously puts the parameters onto the phone weeks, months, maybe even years before the preprocessing is implemented on the computer-implemented methodology. So, we said all along that that temporal component is important. Now, to be sure, we focused primarily on the preamble and the specification because that was, in our mind at the time, the single biggest part of the invention, where they came out with this ability to just tap in immediately and go right into the, frankly, to go right onto the litigation. But what led the district court astray here? I mean, I get your argument, and I think there's some power to it. So, what explains why the district court didn't buy it below? I mean, I think he just bought the plaintiff's argument that it's a characteristic, that that's the way he would read it. I don't think he really did business with the prosecution history, which we cited to both in the claim construction and in the J-Mall, but he basically just said, you know, I think being provided two can be read in any of a number of ways. I don't think he performed the function you expect the district court to perform with respect to claim construction, which is to set out the meets and bounds. You know, the whole purpose of this is to provide notice. Somebody looking at this, and particularly Samsung looking at this, and seeing what they did in response to a very clear rejection based on past preprocessing being provided, and see somebody go in and adjust the entire patent to provide for temporally present preprocessing as the mechanism, and then read the preamble that says that's the key to this, is to be able to do it during the computer-implemented methodology, seems to me that the meets and bounds are clearly defined on that temporal basis. Why the judge missed that, I don't know. Mr. Markman, what was the focus of your argument? Wasn't it on the terms receiving and provided to, which would be past tense as opposed to being provided to? Well, no. I mean, we did all of those things, but again, I think it's fair to say, Judge Rainer, that the primary focus at the time was on the preamble, and using that as a limitation on the entirety of Rule 38. And all we're doing here, frankly, is essentially what the court, I think, recognized as permissible under O2, which is if you have laid out for the district court why it is that this ought to be interpreted temporally as of the time of the actual operation, the computer-implemented operation, you're then permitted to go through and find additional arguments that support it. To be sure, we didn't do the claim differentiation portion of the analysis that we put forward in our brief, but the truth is, it all hangs together. So the argument in your brief is clear. There's no doubt about that. I'm having difficulty in understanding whether you made that argument below, whether you waived the argument that you're making now, whether you waived it. We clearly did not waive that. What we said to the district judge at the claim construction and throughout the trial and in the J-Mall was that there is a temporal component to Claim 38. Now, to be sure, again, we focused primarily in the claim construction on the preamble, but we also cited him to the prosecution history and he didn't find the preamble persuasive and he concluded that then he didn't have to go any further in terms of being provided to meeting any additional interpretation. So again, it seems to me we're talking about exactly what O2 talks about. And didn't, did the district court not say something in proceedings below regarding the waiver? In other words, could we agree that you... Right. No. When we reformulated the argument at the J-Mall stage, he said exactly that, you're making essentially the same argument you made before, you're just dressing it up in a different garb. And while it wasn't specifically in response to a waiver point, it was simply there was a waiver argument made. He did not obviously apply that. He was just explaining his analysis of what we were saying compared to what we had said before. So it seems to me particularly inappropriate for this court to come in and say there's been a waiver when that issue was presented to the district judge and the district judge wasn't offended by it because obviously the whole purpose of this exercise is that we shouldn't be laying in the weeds and ambushing a judge. He didn't feel that way. He thought the issue had been properly put before him. He just didn't agree with us. Now, if we agree hypothetically with you on this question, but not on the other issues you raised with regard to anticipation or infringement on the publication, that's a new trial, right? This is in connection with the motion for a new trial, this issue. No, I think actually the right answer at this stage would be a judgment for the defendant under these circumstances because there is no evidence. I don't think there's any evidence and it was certainly not presented to the jury that there's anything other than the evidence that Samsung puts it on the phones long before the pre-publication. I thought this was all raised though in connection with just the motion for a new trial. Is that what you asked for below, a straight-up reversal on this? Yeah. In our general, we did. Let me ask, but given the way things... I'm sorry. You're right. My bad. It was. It was a new trial. Okay. Because the other thing is, the other argument is, I guess, that assuming they were operating under the different claim construction, you're right, they may not have put on any evidence, but in fairness to them, they didn't think they had to put on certain evidence, assuming they had it. No. I think that's fair. I don't think they have any evidence because I think the proof is quite clear that Samsung, even... I mean, most of this is all put on, obviously, in Korea, but even any of it that may have been put on in the United States is still put on well before the pre-processing process is undertaken by the cell phone itself, but it's a fair point. If they have evidence that they can put on, presumably, they would have the opportunity to do that. Can I just ask you another question about this being provided to argument? I find this kind of puzzling, and I'm trying to get where the real force of your argument is. Is it based, really, on your reading of the claim, or is it more on the claim differentiation argument, looking at the other claims and the various verb tenses used in those? Well, as I said, I think the claim can be read sort of either way. I like our reading of it better, for obvious reasons. I guess I'm being patronized. Well, I agree with you on that. I don't find the being provided to language very clear in that it has to be provided at the time it's performed. So, to me, the force of the argument really still comes primarily from the history, which explains, where did this language come from? Because if you just had this language in the abstract, I don't know what you'd do with it. But when you see the history and the specific rejection, because all you've got is, you know, you don't have anything about parameters in the past, and so they say, well, let's make everything in the present. Are there unasserted claims that do use the past tense of the verb? Yeah, in situations where it clearly calls for actions that have been taken in the past. Every time, but all of the other references, and give the inventors credit, they assiduously went through and modified everything to eliminate this problem. This was not an accommodation to the examiner. This was a recognition that there was a problem. They didn't have any evidence of past parameters being put on. The whole purpose of this invention, the preamble tells you, is to be able to access these on a real-time basis while the computer method is being implemented. So when they're using the past tense in claims 36 and 37, which are unasserted, that's about something entirely different. It's about something entirely different, yes. It's fundamentally different. And again, I... And why is that? Because, I mean, there they specifically use the term parameters that are provided. Right, because under those circumstances, they were provided at some previous point. What they're talking about has been pre-processed. I mean, it's just, it goes to a fundamentally different approach. Isn't that Chris's damages issue? I was just going to say that, Judge Reynolds. My view on the damages is that Mr. Benoit is not, never should have been allowed to testify, certainly not on the particular methodology. He's a CPA. He's gone through here in exactly the way you would not want a jury to evaluate an expert, which is he takes usage data, which he has no evidence from any scientific basis, correlates into value, and immediately correlates it directly, one-to-one, on the value of this particular feature. If we agree with you on that, and even if we agree with you with one of the licenses, if we're still left with disagreeing with you on whether or not the RIM license was appropriately considered, isn't that a basis by itself to sustain jury award there? I don't see how you could get anywhere near $15 million on the RIM license alone. Well, I guess they started with, well, I don't know what numbers I'm allowed to talk about here or whatever. But if you do it on the RIM license, that license comes nowhere near the damages in this particular case. That much I can tell you. You would need the other license in order to get there. So on the RIM license, is that a lump sum figure they came up with? Yes, that is a lump sum figure. Or is this an ongoing royalty? No, that's a lump sum figure. Indeed, all of the settlements are lump sum figures, which is why the jury decided this as a lump sum basis. Well, my basic point on the damages is that Benoit's methodology had no technologist, no scientific method, nothing he had ever used himself, no basis from any literature that suggests that you can take simple usage and convert it into value. And using his methodology, if you do it on the other features, means that 580% of the value of a telephone is on features other than uses as a telephone. I mean, it's a crazy methodology. It should have been rejected out of hand and taken off the table. I know you're into your rebuttal time, but I want to ask you about the lump sum one-time license for all time. You didn't present that theory to the jury, did you? We have evidence on it. No, no. My question is, did you specifically present that theory to the jury? Did we argue it to the jury in the closing? I don't believe we did. It's not in the jury instructions either. Well, the jury instructions says specifically. It's not specifically in the jury instructions that you can grant a one-time lump sum that covers a past and future license. Are you asking me if it said that? Yeah. No, it doesn't say that. What it says is that you should grant damages on a basis that will fully and fairly compensate the plaintiff. And that can be a lump sum damages number, which the jury had plenty of evidence that lump sum is a way that negotiations… Well, did they have plenty of evidence or even an argument to them that they should be considering a lump sum not just for past damages, but for future damages as well? But there was no distinction made in anything presented to the jury asking them to distinguish past from future. Well, don't you think – I mean, the law in this seems to me to be very unclear about whether the future award is actually damages or an equitable award and whether that can even be awarded to a jury. But even assuming it can, shouldn't sum at six be on notice about that's the theory? I mean, it just – I understand you point to evidence from an expert testimony that he mentioned that it could, but it doesn't seem to me that there was any explicit argument anywhere that that was actually the theory you were proposing to the jury. Well, I mean, not only do we have an expert who testified on that, but over and above that, all of the licenses that are – all of the settlement agreements, everything was a lump sum number. Was that your expert or was that the other side's expert? I thought it was just their expert saying a lump sum can't… Both experts testified to it. Their expert defined a lump sum and our expert defined a lump sum. So it was all in front of the jury on both sides. Where did your expert define a lump sum as including future damages? Well, I don't think he called it future damages. What he said was you would enter into an agreement to pay for the entirety of the use throughout the entirety of the use. And the settlement agreements themselves specifically say it covers the entire period of the patent. So that was clearly in front of the jury. Let me just assume that we disagree with you, that that was properly presented. What do we do and that we're going to not… I would defer to the district attorney. What do we do with the $15 million? Do we affirm it or do we send it back and say, you need to reconsider whether this was intended to be a future license as well? Well, I think the district court already made that determination because they raised the issue of what to do with it as a future. And the district judge specifically said this jury had in front of it evidence that a lump sum includes for the entire period of the patent and reached the conclusion that the judge did under these circumstances. So I don't think there's anything to send back. It seems to me the jury has made it as clear as possible. The nature of the royalty is a lump sum royalty. I guess maybe my question wasn't clear because there's different results. Assume we find the district court abused its discretion in interpreting the jury verdict that way. Do we affirm the $15 million and send it back on what should be done for a future license or we just send the whole thing back? No, I think you'd have to send the whole thing back under those circumstances. Thank you, Your Honor. We'll restore three minutes of rebuttal and we'll add three minutes to the other side. May it please the court. Thank you. May it please the court. First, I'd like to address the claim construction issue on Claim 38. Initially, Claim 38 was presented as an original claim. It was never rejected in prosecution.  It pertained to other claims that had different wording. Those claims were cited pre-processing based on previously received parameters. And the examiner rejected under 112 indefiniteness saying, well, you've mentioned in these claims as a claim drafting exercise, previously received parameters, but you have to have an antecedent basis for somewhere else in the claim that you've expressly claimed receipt of them. And so the applicant acquiesced in that and amended those claims under that specific language. But the claim in this case, which is Application 86, Claim 38, was an original claim and it didn't have the previously received parameters being used for pre-processing. What it said was said parameters being previously received or being provided. I think it's clear that being provided is acting as an adjective in this claim and it modifies the noun parameters. And the issue here is not that Summit 6 overtook the position. We don't have to prove that. Of course we have to prove it. It's an element of the claim that we did prove. Can you give me an example outside of the context of this patent where that phrase being provided to would be used to talk about something that occurred in the claim? The pad being provided to me. I'm using the pad today. It has been provided to me by my firm. Well, you just changed the verb tense there from being to being. Right. The pad being provided. Or for instance... Okay, let's stick with the pad being provided. That's being provided in the present. Would that suggest it connotes that it was provided to you in the past? Yes, it does. It connotes past and it's an adjective that applies to the pad. The pad is of the condition that it's being provided. Or for instance, if I had a claim for hammering a nail into the wall, the nail being galvanized, right? The action is hammering the nail. The user completes that element of the method claim when he hammers the nail. For infringement, you have to prove that the nail is galvanized. But if it was galvanized previously, not by the same user, but by whoever manufactured it... Yeah, but galvanized is different. I mean, we argue here in the debate on grammar and so forth is about whether or not it's a characteristic. But it seems to me being provided to, one could fairly argue, is different because it's not a characteristic, right? The words are different, but if you look at the context of the specification, what does being provided mean? When does it happen? In the context of the specification, here's what happens. A user goes to a website, and the website pushes a program down, an ActiveX or an Applet, to the user's browser. That has the parameters in it. That's when the being provided happens. Initially. Then, the user may... That's because being provided to refers back to the parameters. Yes, sir. Those parameters, your argument, have already been provided to the client. Yes, that is exactly it. And so the way the invention works is when the user visits a website, the program is put onto the user's computer. That's when the parameters are provided. Then the user may or may not choose to use that page or that website to upload images at a later time. There's no temporal limitation. It doesn't say you have to do it right away. You could sit around for a long time. It's also clear that the parameters are provided well in advance in the preferred embodiment, the only embodiment, of the actual preprocessing going on. So in the context of what does being provided in this claim mean, it means the parameters have been provided in advance of the preprocessing. But it doesn't say when in advance. Then they have to be in advance of the preprocessing because the preprocessing begins. Again, you're saying being provided means have been provided. In the future. Previously, yes, that's what it means. And that's consistent with how the embodiment is disposed of. What about the other claim languages that use the past tense for having been provided? Isn't there a distinction to be drawn between that when someone uses just the deconstructed statutes when they use different languages suggesting that they're talking about different things? Do we have past use in other cases? Well, that's true. But I think if you look at the language of this claim in connection to other claims, some other claims set this out as an active step of method where it would say, for instance, receiving parameters. Here, there was a choice made. This is a method claim that's written on the context of or written around a client device, the user. I find this all baffling because there are different verb tenses in all the different things. And clearly, there's claims 36 and 37, which I talked about with your friend that says were provided. If you would use were provided here, you'd be on lot firmer ground. He argues that that's for different kinds of methods. I'm not so sure about that. Maybe you can explain. But then you point to other claims. Claim one, I guess, that is receiving preprocessing parameters, which does sound like it's at the same time. I don't know where to fit being provided to in this whole thing. It's such an odd construction that it seems neither were provided or receiving. Right. Okay. And let me explain that because that's exactly the point I want to make. Take claim one, for instance, that you referred to. That sets out the steps of, first, receiving the preprocessing parameters, secondly, receiving an identification of what photos you wish to upload, third, preprocessing the photos you wish to upload, and finally, transmitting them. Those are the four steps. Clearly, receiving the parameters happens first because the parameters have to be there so that the preprocessing can occur in accordance with them. Now, let's go to claim 38. Now, let's go to claims 36 and 37 where they talk about were provided. I see your point on claim one. The receiving is talking about a different step. It's not talking about the processing. It's talking about the receiving. But how does the language from claim 36 and 37, which is talking about parameters, were provided? What stage of the method is that referring to? This is referring to, it says, receiving from the client device preprocessed content. That includes, and this is a claim that's written at the server. So these are method claims, and this is a computer-implemented method. But what they're doing because of joint infringement issues, you have to make sure you write your claim to cover the steps all performed by one actor. 37 is a claim that is written on the server, and they're looking at it from the server standpoint, receiving from the client device this preprocessed digital content that was processed in accordance with preprocessing parameters. And so that's why, that's an explanation for why the verbiage is a little different. Can you point the record quickly to those claims? If you can't, don't worry about it. Well, it's in the patent, it's claim 37. And that's really all I'm looking at is the claim itself. Where is that in the appendix? It is at A330. Okay, thanks. Go ahead. So 37 is a claim written from the server perspective. And the drafter is taking great pains to write all the steps in a tense and in a fashion that the server would be, you know, whoever is working at the server would be implementing them. 38, which was asserted in this case, is written from the perspective of the client device, the computer or cell phone. And what 38 says is, you've got three steps. You initiate that the client device to transfer. Secondly, preprocess. And third, you transmit. When it talks about preprocessing, it says the parameters having been provided. The reason, now here's the critical point. Why do we shift verbs there? In other words, why is having been provided not an active step of the method? The reason is, you want to write a claim that all the active steps are performed by one user, which is what this has done. Now what Samsung says is, they don't dispute, and they didn't dispute at trial, that they do provide parameters. That was never in dispute. The argument was, at trial, this is an active step of the method. We do it in Korea. It doesn't count because it's not in the United States. Our retort to that was, number one, no, it's not an active step. It's an adjective, and it's an adjective that modifies parameters. Because it's not an active step, the Korea exception doesn't apply because we don't have to prove this step is done in the United States. We just have to prove it's true, and we did prove it's true. The second retort to that was, even if it is an active step, even if we grant that argument, it is done in the United States  are reloaded with the parameters. And there's evidence in the record that the Samsung phones are all updated in the United States as part of the routine update system that we're all familiar with for operating systems on cell phones. And so that was the proof under either construction, whether this is active or not. Now, I'd like to talk about the waiver point, though, because this active step never came up in Markman. What happened in Markman was, Samsung argued that the preamble was a limitation. They said the preamble, essentially, must all be done in one computer program, and they wanted to try to limit this method to being done in a single executable. And the district court rejected that, finding that there wasn't grounds to limit this to being all done in one single executable program. In fact, the specification calls out two programs for doing this, a web submission tool and a media object identifier tool. There was also a request to construction that the language we have been discussing, having been provided, is part of the computer implemented method. And that's all they asked. It's part of the method, and the method all needs to be in one computer program. That was their argument. Now what's happened is, after trial and on appeal, the argument has shifted. But the district court here, as you know, considered the question of waiver and really said they're just reshaping the arguments. These are the same things. Do you know of any case in which where a district court has concluded, having sat there himself for all this time, that there was really no waiver? An appellate court would then re-guess the district court and say, yep, there was a waiver. He was wrong? No, I can't cite you a case, Your Honor, on that. But the argument has shifted again on appeal. Beyond what they argued at the district court. On appeal now, what Samson has suggested in this argument is, there's a temporal limitation. We heard that just moments ago. That is the point that has never been raised at the district court. We didn't really join issue on whether this is an active step or not, but we argued it in front of the jury, and it went to verdict. And I'm not saying that you can't decide based on waiver whether it's an active step or not an active step. I think that's fair game. But the more critical limitation that Samson is now trying to advocate for is that there is a temporal limitation. What they basically want to say is, now, not only do the parameters have to be provided, but they have to be provided close in time to when the pre-processing is done. That was never raised at Markman. There was never an argument at Markman about order of steps, temporal limitation, any of that. And if the upshot of this argument today is that Samson wants to convince the court that this all has to happen within pre-processing or close to it in time, that's a very fresh issue. And that's what I'm thinking of. You're running out of your time. The customer surveys, it seems very problematic, the expert report relying on customer surveys of usage and somehow directly correlating that with the value it is to a customer. I use my phone to take pictures and text them, but frankly, if it didn't have it on it, I would have still bought the same phone. I know that's anecdotal, but it does seem to me that there's a big distinction between use and value, and I didn't see anywhere in the expert report where he discussed how he got from use to value. Yes, Your Honor, and the value is at the very beginning of the analysis. The camera component costs, to put it in a phone, on average across all the phones, $14.15. And the expert testified that that is a proxy for what the value is. In other words, the fact that these phones are ubiquitous with cameras means that in aggregate, consumers value the camera capability at $14 or greater, or you wouldn't see them being manufactured in. That's the starting point of value. The surveys are used then to reduce that number based on other features of the camera that we try to segregate out, such as video. Let's take out people who video but don't take pictures. Next, who shares pictures and who doesn't? And then next, who shares by MMS or text versus sharing by other ways that weren't accused? And so the value is not in the surveys. The value is in the initial $14.15, which the survey then used to apportion down or reduce to a smaller allocation of value to just the claimed feature. What is the value of the feature claimed in the invention to Samsung? One more point on the survey. I know there's been some discussion about was Mr. Benoit qualified to rely on the surveys. Interestingly, Samsung's survey expert testified that she contacted all the survey companies, the four of them, interviewed them, and found no flaws in the methodology of the surveys. The surveys were properly admitted. The methodologies are fine. And then the issue really becomes, can an accountant, who's a CPA and has a lot of history testifying in patent infringement cases, reasonably use that information, which he basically took just verbatim and carried over as to how many people used various features, and use that to do an apportionment. And these apportionment analyses are clearly within what Mr. Benoit does on a routine basis. Was the methodology used by the expert, has it ever been tested or subject to peer review of any kind? You know, interestingly, the peer review, I think, would be this court because this court has set up that there's a requirement to do an apportionment. Each case is its own case, so you don't see, for instance, experts take the confidential information from cases and put them out in an article for peer review. A lot of the peer review cases that we see that discuss this really come up in the context of toxic tort cases where an analysis is done and then the question is, well, with this peer review, that we can rely upon it. But when you have a methodology that has essentially been established by the court, which is we have to go ahead and apportion, then I think that methodology carries the imprimatur of being reliable. And in the specific factual circumstances... But essentially the answer to Drayne is no. I haven't seen peer review articles on the use of these surveys for smartphones. The answer, you're right, is no. As far as peer review of this court's methodology, I don't think that's occurred just because there's really no purpose in doing this. This court has set up the methodology. I know my time is up, but I'd like to at least address my cross-appeal very briefly. There's really two points to cross-appeal. The first is just some of the facts of this case. The question wasn't framed or put to the jury in sufficient detail that they could have awarded a lump sum that would exhaust future infringement. There was never any projections introduced by the parties. The district court never instructed the jury on how to evaluate and value future infringement. And the damages question that was provided on the verdict form said, what amount do you find fair to compensate the plaintiff for the infringement you have found? And all the infringement, of course, was proved up based on past acts of infringement. No discussion of proof of future acts of infringement. So I think from that context, if the court finds that the lump sum and the jury writing lump sum verdict award is clearly not appropriate, in other words, they weren't trying to exhaust the future of the patent, the court can affirm the jury verdict and should remand for proceedings for future infringement. But if we can't tell? Well, if you can't tell... That's the problem. There was evidence, right? I mean, your own witness talked about the distinction. Your own witness was the witness, I think, that defined what the difference is between lump sum and not, right? And the jury, presumably, we can assume that they heard it, they understand it, and in this instance, maybe even believed them. These are the two alternatives put out here. It's your burden on damages, not theirs in any event, right? Yes, it's our burden. As far as the definition, it was one Q&A in the record, and they asked the expert on Cross, our expert, can a lump sum be something that exhausts the life of the patent? Which the answer to is yes, but they never followed up with the second question, which you would have disagreed with, which is, are all lump sums doing that? Lump sum is a term of art that gets used, and it can be for a lump sum deal for five years, a lump sum deal for life of patent, lump sum through trial, and in fact, Samsung's expert, when talking about texting plans that go month to month, said you can pay a lump sum of $15 for a texting plan. So all that shows is, lump sum means converted to a sum of money, but it doesn't answer the temporal question. But to Judge Hughes' point is, if you're confused about it, in other words, if it could go either way, obviously the standard is, did the district court abuse its discretion in interpreting the verdict form? If you feel the judge did not abuse his discretion, then the remedy is to remand for a new trial on damages, because the jury has obviously done more than it can do, given the instruction, the verdict form, the evidence in the record. But that will also, and I would request that the court consider, if it does remand on that, giving instruction to the district court about whether exhausting and extinguishing a future violation or a future infringement is even cognizable as a jury issue. I think typically that is vested in the discretion of the district court on an equitable basis. The jury deals with past infringement and damages, and on a future-looking basis, the district court in its equitable jurisdiction has injunction, compulsory forward-looking royalty, or doing nothing, which would not extinguish the cause of action, but permit the patent owner to file another lawsuit for post-predictive infringement. Okay, why don't we wrap it up? That's all I have. We'll give you one minute for rebuttal on the cross-appeal, and we'll add a couple more minutes to Mr. Phillips' time. Thank you, Chief Judge Prost. I'll try to be brief here. The fundamental difference Judge Hughes between 36 and 37, as I think my colleague explained it, is that all of the preprocessing happens in the past, and the first sentence of each of those claims says, has been preprocessed by a client device, and then it says was received. I think it's fascinating that my friend over here consistently changes the language of Claim 38 and said at least four times, having been provided, which I'm sure if they had embraced that language when they wrote this claim, we would be having more of a discussion of publication and other issues than we would on having been received, but having not raised that claim. It's absolutely clear, you go back to the history, that what the inventor did in response to the rejection was change everything to the present tense, and the reason they did that was to make it absolutely clear that this was going to be implemented in the computer implementation methodology described in the preamble. That all falls into place. Frankly, it is amazing how well this patent lines up with that particular theory. The entire additional language in that claim limitation is said preprocessing parameters being provided to. What does a said refer to? The ones that the device itself is reaching out for. I mean, it's the ones that are, you know, it's the general description of preprocessing. It's all the preprocessing that allows you to access, either to transmit or to publish, depending on what it is they're asking you to do. Is it referring to the parameters that are mentioned above in the claims? No, I think what it actually... Or those that have already been provided? No, no, that's clearly not going back to 36 and 37. That's just talking about the preprocessing parameters generally that are described. I mean, that's a term that's used throughout this invention. So it's just talking about said preprocessing. It's not some subset of them dealing with something that had already been provided to them. It's absolutely clear, because even this language in 38 says, you know, this is for preprocessing digital content. Now, and all of the language of 38 is in the present tense. So as I say, it all lines up, to my mind, very, very cleanly. I did not understand my colleague's response to the question of how do you get from use to value. I don't understand what the cost of the camera inside the phone has to do with anything that remotely suggests whether consumers attach any value to this simply because of the use. And I took his answer to your question, Judge Huston, that there is nothing that really connects use and value, and there is no methodology that provides for that. The issue is not the surveys or the validity of the surveys. The question is the methodology for using the surveys. And on that, he frankly says nothing. With respect to the lump sum... Can you give me... I know this is asking you to prove your friend's case, but valuing damages in these cell phone cases is just really confusing to me when there's multiple patents on features and stuff. If you don't have this kind of allocation based upon here's what the camera cost, and we're going to look specifically at different usage surveys and say, well, we don't have anything specific, but this looks pretty good, what more would you require to get to an apportionment? The easiest way is to do a survey that asks consumers specifically what value do you attach to this? Not do you use it, but what value do you attach to it? Pretty straightforward and not that complicated. Now, he couldn't have done that because he's a CPA, but you could hire an expert who could do that. I mean, that answer seems satisfactory, but then on second thought, it seems like then in every single one of these cell phone cases you're going to require the patentee to go out and do all kinds of scientific evidence to come up with this. The patentee has the burden of proof. Has to demonstrate real damages. Can't use the total market rule. You've got the allocation. It just seems like if that's the standard we're going to require, that's going to impose substantial litigation costs on people to come up with value that specifically, and I'm just wondering if damages have to be defined that precisely or where the line is. Well, no, because first of all, a survey, it's not going to say, the survey is not going to say how many cents would you value this at? It would be a different kind of a survey. So it's not going to be that precise. There's still going to be judgment that's embedded in it, and there's still going to be an interpretation that gets applied to it. But it would save themselves the CPA. Yeah, let me ask you this, though. I mean, if you go out with this survey to customers of these cell phones and say, do you value the text messaging or not, and then give them three choices, a lot, some, or none, aren't you still going to end up with some kind of the same approximation? Isn't their usage a fair approximation for how much they value it? I mean, I would assume that if somebody uses it a lot, they're going to say, I value it a lot, and I assume if they don't use it, they're going to say they value it zero. Well, I'm not saying there isn't some relationship potentially there, but the point here is this is a non-scientist who's put this together based on his reading of other research tools with no peer review. I mean, the notion that this court is the peer reviewer for his scientific methodology is a pretty remarkable proposition under Daubert. That's the gatekeeping function. I understand your objections on that, but presuming this person had actually been qualified, and I'm not saying he wasn't, but assuming he's qualified to do all this, and he said, you know, this is really hard to do it, and my best estimate for what value is is to correlate it with usage. Assuming he's qualified, is that enough? And then he would have to demonstrate at the Daubert hearing that there's some scientific basis for that other than he just made it up. I mean, there has to be a scientific basis for it, and there isn't. Just two seconds on the cross-appeal. You know, you asked me specifically about the testimony. 6453, Benoit describes a lump sum license. That's their expert. 6479, Benoit again, just generally says, a lump sum payment is paying for the use of the technology without hindsight. A lump sum payment goes to the licensee because they're bearing the risk of commercialization. And then our expert testified at 7089 and 7090. Specifically, it's my opinion that this should be a lump sum, one-time payment that covers the entirety of the patent, and that's how he describes a lump sum payment. The jury made that determination. It's not an abuse of discretion. If the court decides that the $15 million is not supportable, the right answer is that you leave the lump sum in place as the jury found the licensing agreement, and remand it, either impose $1.5 million or restrict it to no more than $15 million and a lump sum. Is there no further questions? Thank you. Thank you, Your Honor. All right. Maybe a minute or so. Your Honor, on the cross-appeal, I have nothing further to add unless the court has questions of me. I think that's appreciated. Thank you. Thank you. Thank you, counsel, the case is submitted.